UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BEN WEITSMAN & SON OF SCRANTON, LLC;
BEN WEITSMAN & SON, INC.; UPSTATE
SHREDDING, LLC; and UPSTATE SHREDDING
DISC, INC.,

                              Plaintiffs,

v.

HARTFORD FIRE INSURANCE COMPANY; and
HARTFORD CASUALTY INSURANCE,

                              Defendants.
_____

3:16-CV-0780

(GTS/DEP)

APPEARANCES:                          OF COUNSEL:

BARCLAY DAMON LLP                     ANTHONY J. PIAZZA, ESQ.
  Counsel for Plaintiffs              JOSEPH A. WILSON, ESQ.
2000 HSBC Plaza                       MICHAEL E. NICHOLSON, ESQ.
100 Chesnut Street
Rochester, NY 14604-2072

MENZ BONNER KOMAR & KOENIGSBERG, LLP   MICHAEL S. KOMAR, ESQ.
  Counsel for Defendants
One North Lexington Avenue, Suite 1550
White Plains, NY 10601

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this insurance litigation action filed by Ben Weitsman &

Son of Scranton, LLC, Ben Weitsman & Son, Inc., Upstate Shredding, LLC, and Upstate

Shredding Disc, Inc. ("Plaintiffs") against Hartford Fire Insurance Company and Hartford

Casualty Insurance ("Defendants"), are Defendants' motion for summary judgment and

Plaintiffs' cross-motion for summary judgment.  (Dkt. Nos. 27, 28.)  For the reasons set forth

below, Defendants' motion is granted, and Plaintiffs' cross-motion is denied.

I.      **RELEVANT BACKGROUND**

   A.      **Plaintiffs' Claims**

   Generally, liberally construed, Plaintiffs' Complaint alleges as follows.

   Plaintiff Ben Weitsman & Son of Scranton, LLC, was issued a general liability policy of insurance by Defendant Hartford Fire Insurance Company and an umbrella liability policy of insurance by Defendant Hartford Casually Insurance Company.  (Dkt. No. 1, Attach. 1, at 6-10 [Plfs.' Compl.].)  Additionally, Plaintiff Upstate Shredding Disc, Inc., was issued general liability and umbrella liability policies by Defendants Hartford Fire Insurance Company, Hartford Casualty Insurance Company and/or their affiliates. (*Id.*)  Each of the insurance policies were in full force and effect on November 28, 2011. (*Id.*)

   In December 2011, Dorothy Houser and Heidi Houser notified Ben Weitsman & Son of Scranton, LLC, that they were allegedly injured on November 28, 2011, due to Plaintiffs' actions. (*Id.*)  On or about May 16, 2012, Defendants disclaimed and denied coverage to Ben Weitsman & Son of Scranton, LLC, with respect to claim by Dorothy Houser and Heidi Houser. (*Id.*)  Subsequently, a  lawsuit ("the *Houser* lawsuit") was commenced in the Court of Common Pleas of Lackawanna County by individuals ("the *Houser* plaintiffs") claiming bodily injury as a result of the incident of November 28, 2011. (*Id.*)  On or about May 16, 2014, Plaintiffs tendered the *Houser* lawsuit to Defendants seeking defense and indemnification in connection with the underlying claim. (*Id.*)  By letter dated August 18, 2014, Defendants disclaimed and denied coverage to Plaintiff Ben Weitsman & Son of Scranton with respect to the *Houser* lawsuit. (*Id.*)  By a letter dated April 13, 2016, Defendants disclaimed and denied coverage to Ben Weitsman & Son, Inc., Upstate Shredding, LLC, and Upstate Shredding Disc, Inc., with respect to the *Houser* lawsuit. (*Id.*)

2

Based on these factual allegations, Plaintiffs' Complaint assert two claims against Defendants: (1) a claim that Defendants breached their contract with Plaintiffs by refusing to defend and indemnify them in the *Houser* lawsuit; and (2) a claim that Defendants' breach of contract resulted in attorneys' fees and other expenses to defend the *Houser* lawsuit. (*Id.*) Familiarity with these claims and the factual allegations supporting them in Plaintiffs' Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

**B.     Undisputed Material Facts**

   **1.     Undisputed Material Facts on Defendants' Motion for Summary
            Judgment**

The following facts have been asserted and supported with accurate record citations by Defendants in their Statement of Material Facts, and expressly admitted or not denied with a supporting record citation by Plaintiffs in their response thereto.  (*Compare* Dkt. No. 27, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 29 [Plfs.' Rule 7.1 Resp.].)

   **a.     The Parties to This Coverage Action**

1.     Plaintiffs in this action are Ben Weitsman & Son of Scranton, LLC, Ben Weitsman & Son, Inc., Upstate Shredding, LLC, and Upstate Shredding Disc, Inc.

2.     Ben Weitsman & Son of Scranton, LLC, is a company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1500 North Keyser Avenue, Scranton, PA 18504.

3.     Plaintiff Ben Weitsman & Son, Inc., is a New York corporation with its principal place of business in New York.

4.     Plaintiff Upstate Shredding, LLC, is a New York corporation with its principal place of business in New York.

5.     Plaintiff Upstate Shredding Disc, Inc., is a New York corporation with its principal place of business in New York.

6.     Defendant Hartford Fire Insurance Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

7.     Defendant Hartford Casualty Insurance Company is an insurance company organized under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut.

### b.     The *Houser* Lawsuit and Pollution at Issue

8.     This coverage action relates to an underlying lawsuit pending in the Court of Common Pleas of Lackawanna County, Pennsylvania, captioned *Heidi Houser, Robert Houser, Dorothy Houser, Delbert B. Houser, Mary Ogden, and Mary Irwin and Thomas Irwin, individually and as parents and natural guardians of Emelie Irwin, a minor v. Boots & Hanks Towing & Wrecking Service, Ben Weitsman of Scranton, Boots & Hanks, Inc., Edward Zymblosky, Jr., Gail Zymblosky, Edward Zymblosky, III and Upstate Shredding Disc, Inc.* ("the *Houser* lawsuit").

9.     Plaintiffs in this action are named as the defendants in *Houser* lawsuit ("the *Houser* defendants").

10.     The complaint in the *Houser* lawsuit ("the *Houser* complaint") alleges that "Defendants Ben Weitsman & Son, Inc. and/or Upstate Shredding, LLC and/or Ben Weitsman & Son of Scranton, LLC, and/or Ben Weitsman of Scranton and/or Upstate Shredding Disc, Inc.,

operated a scrap-metal recycling facility on the property located at 1500 Keyser Avenue in Scranton, Lackawanna County, Pennsylvania" ("the Site").

11.     The *Houser* complaint alleges that "Defendants Boots & Hanks Towing & Wrecking Service, Boots & Hanks, Inc., Edward Zymblosky, Jr., Gail Zymblosky and/or Edward Zymblosky III, leased the property to Defendants Ben Weitsman & Son, Inc. and/or Upstate Shredding, LLC, and/or Ben Weitsman & Son of Scranton, LLC and/or Ben Weitsman of Scranton and/or Upstate Shredding Disc, Inc., or otherwise allowed Defendants Ben Weitsman & Son, Inc. and/or Upstate Shredding, LLC and/or Ben Weitsman & Son of Scranton, LLC and/or Ben Weitsman of Scranton, and/or Upstate Shredding Disc, Inc., to operate the scrap metal facility" at the Site.

12.     The *Houser* complaint alleges that, during the course of operations at the Site, the *Houser* defendants caused the release of chlorine gas into the air and a "toxic cloud of chlorine gas to form" that drifted to surrounding properties and injured a number of individuals.

13.     The *Houser* complaint alleges that on or about November 28, 2011, at approximately 10:30 a.m., *Houser* plaintiffs Heidi Houser and Dorothy Houser were working in an outdoor lot selling Christmas trees next door to the Site.

14.     The *Houser* complaint alleges that, at the same time, *Houser* plaintiffs Mary Ogden, Mary Irwin, and Emelie Irwin were traveling in a vehicle on North Keyser Avenue and were passing the Site.

15.     The *Houser* complaint alleges that, as a result of the *Houser* defendants' negligent, reckless and careless operations in connection with the scrap-metal business at the Site, "they caused toxic chlorine gas to be released from a cylinder/tank/vessel stored on their

property, releasing the chlorine gas into the air and causing a toxic cloud of chlorine gas to form."

16.     The *Houser* complaint alleges that "chlorine gas is a hazardous and toxic chemical that causes serious physical injury and damage to persons and property upon exposure."

17.     The *Houser* complaint alleges that "the release of the toxic chlorine gas caused a white cloud to form" that "drifted in the air from the [*Houser* defendants'] property at 1500 North Keyser Avenue, Scranton, Pennsylvania to the Christmas tree lot where [*Houser* plaintiffs] Heidi Houser and Dorothy Houser were working."

18.     The *Houser* complaint alleges that *Houser* plaintiffs Heidi Houser and Dorothy Houser "saw the cloud drifting towards them and attempted to run away," but "were overtaken by the cloud and were forced to inhale toxic fumes of chlorine gas from the cloud."

19.     The *Houser* complaint alleges that, "at the same time the cloud drifted towards the area where [*Houser* plaintiffs] Heidi Houser and Dorothy Houser were working, the cloud also drifted near and towards the automobile in which [*Houser* plaintiffs] Mary Ogden, Mary Irwin and Emelie Irwin were traveling. The cloud engulfed their vehicle and they were forced to inhale toxic fumes of chlorine gas from the cloud."

20.     The *Houser* complaint alleges that, as a result of their exposure to chlorine gas, *Houser* plaintiffs, Heidi Houser, Dorothy Houser, Mary Ogden, Mary Irwin and Emelie Irwin, have suffered and may continue to suffer bodily injury, throat and eye irritation, pain, respiratory ailments and related damages.

6

21.     The *Houser* complaint asserts causes of action against the *Houser* defendants (i.e., Plaintiffs in this action) for negligence, negligence-res ipsa loquitor, strict liability-inherently dangerous substance, strict liability-ultrahazardous activity, common law conspiracy, fraud and misrepresentation, loss of consortium and punitive damages.

22.     More specifically, the Counts in the *Houser* complaint allege that the *Houser* defendants (i.e., Plaintiffs in this action) are liable, *inter alia*, for the following fourteen actions:

(a)     "permitting and/or causing toxic chlorine gas to be released into the air";

(b)     "failing to properly manage/store and/or handle a container of hazardous waste and/or material in violation of 25 Pa. Code § 264a.173";

(c)     "opening, handling and/or storing a container holding hazardous waste and/or material in a manner which caused the container to rupture or leak in violation of 40 C.F.R. § 264.173";

(d)     "failing to observe the federal regulations for owners and operators of hazardous waste/material treatment, storage and disposal management in violation of 25 Pa. Code § 264a.1";

(e)     "failing to control air pollutant emissions in violation of 40 C.F.R. § 264.1082";

(f)     "failing to control air pollutant emissions from a container in violation of 40 C.F.R. § 264.1086";

(g)     "failing to timely and/or properly notify appropriate government agencies, officials and the authorities of the chlorine gas emissions, discharges and carriage and/or the potential and degree of risk to the adjoining community";

7

(h)     "failing to use proper and safe practices and/or procedures such that chlorine gas would not be introduced into the environment including, in particular, the air";

(i)     "Toxic chlorine gas [being] released into the air by the actions of Defendants";

(j)     Storing, handling and/or releasing "into the environment and air an inherently dangerous substance, chlorine gas;

(k)     failing to use "every reasonable precaution to avoid emission of this toxic and inherently dangerous substance into the air and avoid injury to everyone lawfully in the area";

(l)     engaging in an ultrahazardous activity by emitting "unlawful and unhealthy levels of toxic chlorine gas into the environment and air" and exposing the public to the same;

(m)     concealing and failing to warn "that the hazardous substance chlorine gas was emitted from their operations and activities on the property and that it was migrating into the environment and air onto adjacent properties and areas nearby"; and

(n)     exhibiting "reckless indifference in . . . causing and permitting the release of chlorine gas into the environment and air [that] would result in serious injury to others who would be exposed to the gas."

### c. The Policies

23.     Hartford Fire Insurance Company issued primary general liability policy no. 22 UUV PG7953 to Plaintiff Ben Weitsman & Son of Scranton, LLC, for the policy period June 1, 2011, to June 1, 2012.

24.     Hartford Fire Insurance Company issued primary general liability policy no. 22 UUV NN7953 to Plaintiff Upstate Shredding, LLC, for the policy period October 1, 2011, to October 1, 2012.

25.     Hartford Fire Insurance Company issued primary general liability policy no. 22 UUV RB2778 to Plaintiff Ben Weitsman & Son, Inc., for the policy period October 1, 2011, to October 1, 2012.

26.     Hartford Casualty Insurance Company issued umbrella liability policy no. 22 RHV PG7617 to Plaintiff Ben Weitsman & Son of Scranton, LLC, for the policy period June 1, 2011, to June 1, 2012.

27.     Hartford Casualty Insurance Company issued umbrella liability policy no. 22 RHV RB2439 to Plaintiff Upstate Shredding, LLC, for the policy period October 1, 2011, to October 1, 2012.

28.     Hartford Casualty Insurance Company issued umbrella liability policy no. 22 RHV RB2438 to Plaintiff Ben Weitsman & Son, Inc., for the policy period October 1, 2011, to October 1, 2012.

29.     The Hartford Defendants ("Hartford") did not issue any policies to Plaintiff Upstate Shredding Disc, Inc., nor is Upstate Shredding Disc, Inc., listed as an additional insured on any insurance policy issued by Hartford.

30.     The Hartford policies described above ("the Hartford policies") contain absolute pollution exclusions.

31.     More specifically, each of the primary general liability policies contain the following absolute pollution exclusion:

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**ABSOLUTE POLLUTION EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     It is agreed that Exclusion **f.** is replaced by the following:

**f. (1)**  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)**  At or from any premises, site or location which is or was at any time owned, occupied by, or rented or loaned to, any insured;

**(b)**  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)**  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(d)**  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

**(e)**  To the extent that any such "bodily injury" or "property damage" is included in the "products completed ope1ations hazard".

10

    **(2)**       Any loss, cost or expense arising out of any:

        **(a)**       Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants";

        **(b)**       Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

B.     The last paragraph of **Section I  - Coverage A** (after the exclusions) is replaced by the following:

Exclusions **c.** through **e.,** and **g.** through **n.** do not apply to damage by fire, lightning or explosion to premises rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **Ill** - Limits Of Insurance.

32.    The Primary Policies also contain relevant definitions:

"Bodily injury" is defined as follows:

    **5.**       "Bodily injury" means physical:
        **a.**      Injury;
        **b.**      Sickness; or
        **c.**      Disease

        sustained by a person and, if arising out of the above, mental anguish or death at any time.

33.    "Pollutants" is defined as follows:

    **18.**     "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

34.    "Property damage" is defined as follows:

    **20.**    "Property damage" means:

        **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

35.    Similarly, each of the umbrella liability policies contain the following absolute pollution exclusion:

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**ABSOLUTE POLLUTION EXCLUSION**

This endorsement modifies insurance provided under the

UMBRELLA LIABILITY POLICY

**Exclusion 1. Pollution** is hereby deleted in its entirety and replaced by the following:

This policy does not apply to:

**1.    Pollution**

Any obligation:

    **a.**    To pay for the cost of investigation, defense or settlement of any claim or suit against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

      **b.**    To pay any "damages", judgments, settlements, loss. costs or expenses that may be awarded or incurred:

          **1.**    By reason of any such claim or suit or any such injury or damage; or

          **2.**    In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion. pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

      **a.**    Pollutants;

      **b.**    Contaminants;

      **c.**    Irritants; or

      **d.**    Toxic substances;

Including:
Smoke;
Vapors;
Soot;
Fumes;
Acids;
Alkalis;
Chemicals, and
Waste materials consisting of or containing any of the foregoing. Waste includes materials to be recycled, reconditioned or reclaimed.

36.    After the incident at issue in this action (described below), Plaintiffs sought to secure "Pollution Coverage" under a separate "pollution policy" for certain of their recycling yards.

37.    With respect to the Hartford policies mentioned above, Plaintiffs' insurance applications stated that they did not have past, present or discontinued operations involving storing, treating, discharging, applying, disposing, or transporting hazardous materials (including landfills, wastes, fuel tanks, etc.).

38.     In their applications for the Hartford umbrella policies, Plaintiffs further stated that the applied-for Hartford primary policies would not include "Pollution Liability" coverages or exposures.

39.     As reflected in Hartford's underwriting file, Plaintiffs' broker bound coverage as proposed by Hartford, and secured a separate pollution policy quoted by another company.

### d.     Coverage Dispute

40.     On or about February 3, 2012, Hartford received notice of a claim on behalf of Ben Weitsman & Son of Scranton, LLC, concerning the incident giving rise to the *Houser* lawsuit ("the Houser claim").

41.     By letter of May 16, 2012, Hartford denied coverage for the Houser claim based on the absolute pollution exclusions contained in the Hartford policies.

42.     In or about February 2012, correspondence dated January 19, 2012, from the *Houser* plaintiffs' counsel was forwarded to Hartford, which alleged that, during the course of Plaintiffs' operations at the recycling facility, "they allowed a substantial amount of chlorine gas to escape into the surrounding environment" and that, as a result, the *Houser* plaintiffs "were directly in the path of the chlorine gas cloud and both suffered significant respiratory distress and damages as a result of being exposed to high levels of chlorine gas."

43.     Hartford sent a letter to Adam Weitsman (of Ben Weitsman & Son) acknowledging receipt of the Houser claim on February 17, 2012 (which was incorrectly dated 2011), asking whether coverage was being sought under any policy other than the one listed in the Notice of Occurrence/Claim, and indicating that the correspondence should not be deemed or construed as an admission that coverage is available for the matter and or a waiver of any rights, positions or defenses of Hartford.

44.     On May 16, 2012, Hartford issued a coverage position letter wherein it disclaimed coverage for the Houser claim based on the absolute pollution exclusions contained in the Hartford policies.

45.     In its letter of May 16, 2012, Hartford indicated that it had located additional policies for entities that may be associated with various Ben Weitsman companies and to immediately advise if coverage was being sought with respect thereto.

46.     On June 15, 2012, the insured's broker sent Hartford an email attaching information and an incident report provided by the current yard manager of Ben Weitsman & Son of Scranton, LLC, and asking Hartford to review this "new information" in connection with its coverage determination.

47.     By letter dated August 15, 2012, Hartford advised Adam Wietsman that the Incident Report appeared consistent with Hartford's understanding of the Houser claim, which alleged the escape of chlorine gas into the surrounding environment and exposure to a chlorine gas cloud.

48.     In its letter of August 15, 2012, Hartford advised Adam Weitsman that the additional information did not change Hartford's coverage position with respect to the Houser claim.

49.     On or about May 13, 2014, Hartford received an email concerning the *Houser* lawsuit from the insured's broker, which attached a letter from counsel for Ben Weitsman & Son of Scranton forwarding correspondence from the *Houser* plaintiffs' attorney requesting copies of the primary general liability policy and umbrella liability policy issued by Hartford to Ben Weitsman & Son of Scranton.

50.     On or about May 14, 2014, Hartford received by fax a General Liability Notice of Occurrence/Claim in connection with the *Houser* lawsuit involving the Houser claim, stating, "Company in a lawsuit arising out of the alleged release of chlorine gas at the Scranton Yard/see attached/limited information/actual d.o.l. unknown."

51.     On June 12, 2014, the insureds' broker emailed Hartford to advise it that the insureds "have been trying unsuccessfully" to send various files, including a copy of the 500+ page *Houser* complaint, and were providing a link to a sharefile website to download the documents.

52.     On August 13, 2014, Hartford received a letter from "personal counsel to Ben Weitsman & Son of Scranton and its related entities" alleging that Hartford was required to provide coverage under the primary commercial liability policy issued to Ben Weitsman & Company of Scranton, LLC, because it purportedly had failed to timely and properly disclaim coverage for the Houser claim back in 2012.

53.     The position taken by "personal counsel to Ben Weitsman & Son of Scranton and its related entities" in its letter of August 13, 2014, was based on New York Insurance Law § 3420(d).[1]

54.     By letter dated August 18, 2014, Hartford again disclaimed coverage and any duty to defend and indemnify Ben Weitsman & Son of Scranton, LLC, with respect to the *Houser* lawsuit and Houser claim.

---

[1]     Generally, New York Insurance Law § 3420(d) requires, *inter alia*, that, if an insured disclaims liability (under a liability policy issued or delivered in New York State) for bodily injury arising out of an accident occurring in New York State, then the insured must give written notice of the disclaimer "as soon as is reasonably possible" to the insured and any other claimant.  N.Y. Ins. Law § 3420(d)(2).

16

55.     In its letter of August 18, 2014, Hartford advised Adam Weitsman that it had located policies issued to other entities that "may be associated with various Ben Weitsman companies," asked the recipient to immediately advise if coverage was being sought for other entities in connection with the *Houser* lawsuit and under any other policies and, if so, asked the recipient to delineate the history/relationship of the particular entity.

56.     In its letter of August 18, 2014, Hartford expressly reserved all rights, positions and defenses under such policies pending an analysis of any further claim under other policies.

57.     On September 8, 2014, "personal counsel to Ben Weitsman & Son of Scranton, LLC and its related entities" sent a follow-up letter to Hartford claiming it was entitled to coverage under the primary commercial liability policy issued to Ben Weitsman & Company of Scranton, LLC, and demanding a written response from Hartford to its letters.

58.     On September 24, 2014, Hartford sent a letter in response to the correspondence of September 8, 2014, reaffirming its coverage position based on the absolute pollution exclusion and advising that counsel's arguments based on New York Insurance Law § 3420(d) were misplaced.

59.     On February 22, 2016, Hartford received additional correspondence from counsel for Ben Weitsman & Son of Scranton, LLC, which asserted that the firm also represented Ben Weitsman & Son, Inc., Ben Weitsman of Scranton, Upstate Shredding, LLC, and Upstate Shredding Disc, Inc., in connection with the *Houser* lawsuit.

60.     In its letter of February 22, 2016, counsel asserted that Hartford was obligated to defend and indemnify Upstate Shredding, LLC, and Ben Weitsman & Son, LLC, in connection with the *Houser* lawsuit and that the absolute pollution exclusion in any applicable policies purportedly did not apply "to a bodily injury claim for inhalation of toxic fumes."

61.    On April 13, 2016, Hartford sent a letter to the insureds' counsel confirming Hartford's prior coverage position and Hartford's denial of coverage based on the absolute pollution exclusion for the additional entities identified in counsel's letter of February 22, 2016, including Upstate Shredding, LLC, and Ben Weitsman & Son, Inc.

62.    In its letter of April 13, 2016, Hartford further advised the insureds' counsel that it did not issue any policies to "Upstate Shredding Disc, Inc." or "Ben Weitsman of Scranton" and, therefore, had no coverage obligations to such entities.

63.    On May 11, 2016, Plaintiffs filed this declaratory judgment action in the Supreme Court of the State of New York, County of Tioga.

64.    On June 29, 2016, Hartford timely filed a Notice of Removal on the basis of diversity.[2]

65.    On October 17, 2016, Hartford filed its Amended Answer disputing any coverage obligations to Plaintiffs.

### 2.    Undisputed Material Facts on Plaintiffs' Cross-Motion for Summary Judgment

The following facts have been asserted and supported with accurate record citations by Plaintiffs in their Statement of Material Facts, and expressly admitted or not denied with a supporting record citation by Defendants in their response thereto.  (*Compare* Dkt. No. 28, Attach. 8 [Plfs.' Rule 7.1 Statement] *with* Dkt. No. 31 [Defs.' Rule 7.1 Resp.].)

---

[2]    The Court notes that, although both Plaintiff and Defendant stated that this Notice was filed on June 28, 2016, the Notice was actually filed on (and dated) June 29, 2016.

## a.   The Parties

1.      Plaintiffs in above-captioned action are Ben Weitsman & Son of Scranton, LLC, Ben Weitsman & Son, Inc., Upstate Shredding, LLC, and Upstate Shredding Disc, Inc.

2.      Plaintiff Ben Weitsman & Son of Scranton, LLC, is a company organized under the laws of the Commonwealth of Pennsylvania.

3.      Plaintiff Ben Weitsman & Son, Inc., is a New York corporation with a place of business in Owego, New York.

4.      Plaintiff Upstate Shredding, LLC, is a New York limited liability company with a place of business in Owego, New York.

5.      Plaintiff Upstate Shredding Disc, Inc., is a New York corporation with a place of business in Owego, New York.

6.      Hartford Fire Insurance Company is a company organized under the laws of the State of Connecticut, with a principal place of business in Hartford, Connecticut, and is licensed to conduct business in the State of New York.

7.      Hartford Casualty Insurance Company is a company organized under the laws of the State of Indiana, with a principal place of business in Hartford, Connecticut, and is licensed to conduct business in the State of New York.

## b.   The *Houser* Lawsuit

8.      This coverage action relates to an underlying lawsuit currently pending in the Court of Common Pleas of Lackawanna County, Pennsylvania, captioned *Heidi Houser, Robert Houser, Dorothy Houser, Delbert B. Houser, Mary Ogden, and Mary Irwin and Thomas Irwin, individually and as parents and natural guardians of Emelie Irwin, a minor, v. Boots & Hanks Towing & Wrecking Service, Ben Weitsman & Son, Inc., Upstate Shredding, LLC, Ben Weitsman*

19

*& Son of Scranton, LLC, Ben Weitsman of Scranton, Boots & Hanks, Inc., Edward Zymblosky,*

*Jr., Gail Zymblosky, Edward Zymblosky, III, and Upstate Shredding Disc, Inc.* ("the

*Houser* lawsuit").

       9.      Plaintiffs herein are named as defendants in the *Houser* lawsuit ("the *Houser*

defendants").

       10.     The complaint in the *Houser* lawsuit ("*Houser* complaint") alleges that on or

about November 28, 2011, at approximately 10:30 a.m. (EST), Heidi Houser and Dorothy

Houser (plaintiffs in the *Houser* lawsuit) were working in an outdoor Christmas tree lot next

door to a scrap metal facility operated by "Ben Weitsman & Son, Inc. and/or Upstate Shredding,

LLC and/or Ben Weitsman & Son of Scranton, LLC, and/or Ben Weitsman of Scranton and/or

Upstate Shredding Disc, Inc." (the "Site").

       11.     The *Houser* complaint alleges that at the same time, Mary Ogden, Mary Irwin,

and Emelie Irwin (also plaintiffs in the *Houser* lawsuit) were traveling in a vehicle nearby the

Site.

       12.     The *Houser* complaint alleges that, during the course of operations at the Site,

"Ben Weitsman & Son, Inc. and/or Upstate Shredding, LLC and/or Ben Weitsman & Son of

Scranton, LLC, and/or Ben Weitsman of Scranton and/or Upstate Shredding Disc, Inc." caused

the release of chlorine gas into the air.

       13.     The *Houser* complaint alleges that the release caused a white cloud to form that

drifted to the Christmas tree lot where Heidi Houser and Dorothy Houser were working.

       14.     The *Houser* complaint alleges that the white cloud drifted toward a vehicle in

which Mary Ogden, Mary Irwin, and Emelie Irwin were traveling.

15.     The *Houser* complaint alleges that Heidi Houser, Dorothy Houser, Mary Ogden, Mary Irwin, and Emelie Irwin suffered, and may continue to suffer, bodily injury as a result of their alleged exposure to "chlorine gas from the cloud" or "the white cloud."

### c.     The Insurance Policies

16.     Hartford Fire Insurance Company issued primary general liability policy no. 22 UUV PG7953 to Plaintiff Ben Weitsman & Son of Scranton, LLC, for the policy period June 1, 2011, to June 1, 2012.

17.     Hartford Fire Insurance Company issued primary general liability policy no. 22 UUV NN7953 to Plaintiff Upstate Shredding, LLC, for the policy period October 1, 2011, to October 1, 2012.

18.     Hartford Fire Insurance Company issued primary general liability policy no. 22 UUV RB2778 to Plaintiff Ben Weitsman & Son, Inc., for the policy period October 1, 2011, to October 1, 2012.

19.     Hartford Casualty Insurance Company issued umbrella liability policy no. 22 RHV PG7617 to Plaintiff Ben Weitsman & Son of Scranton, LLC, for the policy period June 1, 2011, to June 1, 2012.

20.     Hartford Casualty Insurance Company issued umbrella liability policy no. 22 RHV RB2439 to Plaintiff Upstate Shredding, LLC, for the policy period October 1, 2011, to October 1, 2012.

21.     Hartford Casualty Insurance Company issued umbrella liability policy no. 22 RHV RB2438 to Plaintiff Ben Weitsman & Son, Inc., for the policy period October 1, 2011, to October 1, 2012.

#### d.      The Coverage Dispute

22.      On or about February 3, 2012, Plaintiffs Ben Weitsman & Son of Scranton, LLC, provided notice of a claim to Hartford with respect to the *Houser* lawsuit ("the Houser claim").

23.      Hartford sent a letter to Adam Weistman of Ben Weitsman & Son on February 17, 2012, acknowledging receipt of the Houser claim.

24.      By letter dated May 16, 2012, Hartford denied any obligation to defend or indemnify Ben Weitsman & Son of Scranton, LLC, based on a pollution exclusion contained in primary policy no. 22 UUV PG7953 and umbrella policy no. 22 RHV PG7617.

25.      On May 16, 2014, the five individuals allegedly injured on November 28, 2011, commenced a lawsuit against Ben Weitsman & Son of Scranton, LLC, Ben Weitsman & Son, Inc., Upstate Shredding, LLC, and Upstate Shredding Disc, Inc., among other persons and entities (the aforementioned "*Houser* lawsuit"), alleging that they sustained injuries from the exposure to the chlorine cloud.

26.      The Weitsman entities tendered the *Houser* lawsuit to Hartford, seeking defense and indemnification in the lawsuit; and by letter dated May 27, 2014, Weitsman's counsel sent a letter reiterating that it was seeking a defense for all the Weitsman entities in the *Houser* lawsuit.[3]

27.      Hartford and/or their agent received the letters.

28.      By letter dated August 18, 2014, Hartford denied any obligation to defend or indemnify Ben Weitsman & Son of Scranton, LLC, with respect to the *Houser* lawsuit under primary general liability policy no. 22 UUV PG7953 and umbrella liability policy no. 22 RHV PG7617.

---

[3]      The letter dated May 27, 2014, was sent to Don Patterson of Partners Insurance and Financial, an agent of Hartford.  (Dkt. No. 27, Attach. 31 at 6.)

22

29.     On September 8, 2014, Plaintiffs' counsel in this coverage action sent Hartford a follow-up letter asserting its right to coverage under the primary commercial liability policy issued to Ben Weitsman & Company of Scranton, LLC, and demanding a written response from the Hartford.

30.     On September 24, 2014, Hartford sent a letter in response to the correspondence of September 8, 2014, reaffirming its disclaimer of coverage to Ben Weitsman & Son of Scranton, LLC, based upon two types of "Absolute Pollution Exclusions" contained in the relevant insurance policies and advised counsel the arguments based on New York Insurance Law Section § 3420(d) were misplaced.

31.     By letter dated February 22, 2016, Plaintiffs' counsel in this coverage action advised Hartford that, in addition to representing Ben Weitsman & Son of Scranton, LLC, it also represented Ben Weitsman & Son, Inc., Upstate Shredding, LLC, and Upstate Shredding Disc, Inc.

32.     By letter dated April 13, 2016, Hartford denied any obligation to defend or indemnify Ben Weitsman & Son, Inc., and Upstate Shredding, LLC, with respect to the *Houser* lawsuit based upon two absolute pollution exclusions contained in the relevant insurance policies.

33.     On May 11, 2016, Plaintiffs filed this declaratory judgment action in New York State Supreme Court, County of Tioga.

34.     On June 28, 2016, Hartford filed a Notice of Removal to this Court on the basis of diversity.

35.     On October 17, 2016, Hartford filed its Amended Answer disputing coverage obligations to Plaintiffs.

23

C.     **Parties' Briefing on Their Motions for Summary Judgment**

1.     **Parties' Briefing on Defendants' Motion**

a.     **Defendants' Brief in Chief**

Generally, in support of their motion for summary judgment, Defendants assert four arguments: (1) under the choice-of-law rules of the forum state (New York), no choice-of-law analysis is required because Plaintiffs' coverage claims are barred under both New York and Pennsylvania law and thus no conflict of law exists; (2) Hartford has no duty to defend or indemnify Plaintiffs in connection with the *Houser* lawsuit because (a) as a matter of law, clear and unambiguous policy terms must be enforced as written; (3) Hartford has no duty to defend or indemnify Plaintiffs in connection with the *Houser* lawsuit because the plain language of the absolute pollution exclusions bar coverage for the claims asserted in the *Houser* complaint as a matter of law given that (i) chlorine is a pollutant and (ii) the *Houser* complaint alleges injuries solely arising out of the discharge, dispersal and release of pollutants into the environment that squarely fall within the scope of the absolute pollution exclusions; and (4) Hartford has no duty to defend or indemnify Plaintiffs against the claims asserted in the *Houser* lawsuit because Hartford's denial of coverage was proper and enforceable.  (*See generally* Dkt. No. 27, Attach. 38 [Defs.' Memo. of Law].)

b.     **Plaintiffs' Response Brief**

Generally, in opposition to Defendants' motion, Plaintiffs assert four arguments: (1) New York's choice-of-law principles require that New York law apply to this dispute; (2) Hartford may not sustain its disclaimer over coverage to Weitsman on the basis of the pollution exclusion because (a) the injuries alleged here are not the result of environmental pollution and the application of the absolute pollution exclusion would be inconsistent with its general purpose

and (b) the absolute pollution exclusion is ambiguous with respect to its application to the event

alleged in the *Houser* lawsuit; (3) Hartford has a duty to defend Weitsman in the *Houser* lawsuit,

because the allegations are subject to other interpretations; and (4) Hartford improperly and

untimely disclaimed coverage to Weitsman, because Hartford did not notify all of the companies

of the waiver for roughly two years. (*See generally* Dkt. No. 28, Attach. 9 [Plfs.' Memo. of

Law].)

### c.      Defendants' Reply Brief

Generally in their reply, Defendants assert two arguments: (1) Plaintiffs erroneously

argue that the *Houser* lawsuit does not involve "environmental pollution" to which absolute

pollution exclusions apply, because (a) the exclusion applies regardless of whether the discharge

is gradual or abrupt, or whether the release is accidental or expected, (b) the New York Court of

Appeals has held merely that such exclusions did not clearly and unequivocally bar claims from

*indoor* exposure to the insured's tools of its trade, (c) nothing in the exclusion (or New York

law) limits the exclusion's application to intentional long-term polluters or prolonged events, (d)

regarding Plaintiffs' ambiguousness argument, the issue is not whether an insured can conjure up

hypothetical scenarios that would place the exclusion in doubt but whether the substance in

question clearly and unambiguously falls within the definition of a "pollutant" under the policies,

and (e) regarding Plaintiffs' argument that only Plaintiff Ben Weitsman of Scranton, LLC leased

the site in question (and thus Defendant should cover the claims of the other Plaintiffs), Plaintiffs

ignore the fact that the Houser complaint alleges that *all* of the Plaintiffs were engaged in

operations at the site; and (2) Plaintiffs' conclusory statement concerning the enforceability of

Hartford's disclaimer is both legally and factually deficient, because Plaintiffs' waiver argument

(i.e., that Defendant waived its right to disclaim coverage by purportedly delaying its denial of

coverage for all entities) ignores (a) the New York case law holding that coverage cannot be created by means of waiver where it otherwise does not exist by virtue of a policy exclusion, and (b) the lack of any detrimental reliance or prejudice on the part of Plaintiffs. (*See generally* Dkt. No. 32 [Defs.' Reply Memo. of Law].)

### 2.   Parties' Briefing on Plaintiffs' Cross-Motion

#### a.   Plaintiffs' Brief in Chief

Generally, in support of their cross-motion, Plaintiffs asserts the same four arguments summarized above in Part I.C.1.b. of this Decision and Order: (1) New York's choice-of-law principles require that New York law apply to this dispute; (2) Hartford may not sustain its disclaimer of coverage to Weitsman on the basis of the pollution exclusion; (3) Hartford has a duty to defend Weitsman in the *Houser* lawsuit; and (4) Hartford improperly and untimely disclaimed coverage to Weitsman. (*See generally* Dkt. No. 28, Attach. 9 [Plfs.' Opp'n Memo. of Law].)

#### b.   Defendants' Response Brief

Generally, in their response to Plaintiffs' cross-motion for summary judgment, Defendants argue as follows: (1) Plaintiffs erroneously argue that the *Houser* lawsuit does not involve "environmental pollution" to which absolute pollution exclusions apply; and (2) Plaintiffs' conclusory statement concerning the enforceability of Hartford's disclaimer is both legally and factually deficient. (*See generally* Dkt. No. 32 [Defs.' Memo. of Law].)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[5]  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted

---

[4]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[5]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[6]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[7]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See*

---

[6]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[7]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.      Legal Standards Governing Plaintiffs' Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiffs' claims in this action, the Court will not recite, in detail, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 27, Attach. 38 [Defs.' Memo. of Law]; Dkt. No. 28, Attach. 9 [Plfs.' Opp'n Memo. of Law]; Dkt. No. 32 [Defs.' Opp'n Memo. of Law].)  Rather, the Court will merely set forth the general points of law regarding (1) the legal standard governing choice of law, and (2) the legal standard governing pollution exclusions.

### 1.      Legal Standard Governing Choice of Law

A federal court in a diversity case must look to the choice of law rules of the state in which it sits to resolve conflict of law issues.  *Klaxon Co. v. Stentor Elec. Mfg. Co. of N. Am.*, 313 U.S. 487, 496-97 (1941); *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1366 (S.D.N.Y. 1995).  "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws."  *In re Allstate Ins. Co.*, 613 N.E.2d 936, 937 (N.Y.1993).  Under New York law, actual conflict is present "where there are relevant substantive differences that could have a significant impact on the outcome of the case." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*,

414 F.3d 325, 332 (2d Cir.2005).  "It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis."  *Curley v. AMR Corp*., 153 F.3d 5, 12 (2d Cir. 1998).

If a conflict does exist, then, to determine which law governs a contractual relationship between the parties, the Court must determine the state with the "greatest interest in the litigation."  *Crescent Oil & Shipping Servs., Ltd. v. Phibro Energy, Inc.*, 929 F.2d 49, 52 (2d Cir. 1991).  The Second Circuit refers to this test as the "paramount interest" test.  *Hunter v. Greene*, 734 F.2d 896, 899 (2d Cir. 1984); *Tischmann*, 882 F. Supp. at 1366.  The New York Court of Appeals refers to this test as a "center of gravity" or "grouping of contacts" test in which the selection of "the contacts that obtain significance in the particular contract dispute" plays a "critical" role.  *Matter of Allstate Ins. Co. (Stolarz--New Jersey Mfrs. Ins. Co.)*, 81 N.Y.2d 219, 226 (N.Y. 1993).  Whatever its name, under this test, "the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict."  *Intercont'l Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382 (N.Y. 1969); *Hunter*, 734 F.2d at 899; *Tischmann*, 882 F. Supp. at 1366.

In cases involving insurance contracts, courts look primarily at which state "the parties understood was to be the principal location of the insured risk" unless (with respect to the particular issue) some other state has "a more significant relationship" to the transaction and the parties (such as being where the parties resided and/or where the contract was issued and negotiated).  *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 318 (N.Y. 1994); *Colonial Penn Ins. Co. v. Minkoff,* 338 N.Y.S.2d 444, 445 (N.Y. App. Div., 1st Dep't 1972), *aff'd*, 33 N.Y.2d 542 (N.Y. 1973); *Steinbeck v. Aetna Casualty and Surety Co.,* 81 A.D.2d 382, 385-86 (N.Y. App. Div., 1st Dep't 1981); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F.

Supp. 3d 460, 496 (S.D.N.Y. 2014); *cf. Munzer v. St. Paul Fire and Marine Ins. Co.*, 145 A.D.2d 193, 200-01 (N.Y. App. Div., 3d Dep't 1989) (characterizing the understood location of the insured risk as the "primary factor" in the application of the "grouping of contacts rule" in an insurance case).

When the insured risk is essentially restricted to one state, the understood location of the insured risk is given "overriding consideration in determining applicable law." *O'Neill v. Yield House Inc*., 964 F. Supp. 806, 810 (S.D.N.Y. 1997). When, however, the understood location of the insured risk is spread across multiple states, the understood location of the insured risk is given "less significance." *O'Neill*, 964 F. Supp. at 810. In such a case, the insured's principal place of business is the primary factor. *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 544 (N.Y. 2011); *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp*., 36 A.D.3d 17, 24, 27 (N.Y. App. Div., 1ˢᵗ Dep't 2006), *aff'd*, 9 N.Y.3d 928 (N.Y. 2007); *Fireman's Fund Ins. Co.*, 10 F. Supp. 3d at 496.

Having said all of that, while grouping of contacts is the primary analytical tool in contract cases, in certain instances "the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered." *Zurich Ins. Co.*, 84 N.Y.2d at 318-19 (quoting *Matter of Allstate Ins. Co.*, 81 N.Y.2d at 226). Theoretically, in a proper case, a foreign State's sufficiently compelling public policy could preclude an application of New York law otherwise indicated by the grouping of contacts analysis, particularly where New York's policy is weak or uncertain." *Zurich Ins. Co.*, 84 N.Y.2d at 319.

### 2.      Legal Standard Governing Pollution Exclusions

Under Pennsylvania law, when an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving that defense. *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1366 (Pa. 1987) (citing *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 [Pa. 1966]); *Armon v. Aetna Cas. & Surety Co.*, 87 A.2d 302, 304 (Pa. 1952). The insurer must prove the language of the contract is clear and unambiguous; otherwise, the provision will be construed in favor of the insured.  *Fayette Cty. Housing Auth. v. Housing and Redevelopment Ins. Exch.*, 771 A.2d 11, 13 (Pa. Super. Ct. 2001). When construing a policy, "[w]ords of common usage . . . are to be construed in their natural, plain and ordinary sense . . . and we may inform our understanding of these terms by considering their dictionary definitions"; and "[w]here . . . the language of the [policy] is clear and unambiguous, a court is required to give effect to that language." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 608 (Pa. 1999) (citations omitted); *see also Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 902 (3d Cir. 1997) (explaining that the court will not read "environmental catastrophes" into conditions that trigger bar of coverage into an insurance policy).  A policy should be interpreted to ascertain the intent of the parties as manifested by the language of the written instrument.  *Madison Const. Co.*, 557 Pa. at 606.  "Guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, [courts are to] focus on the specific product at issue."  *Id.* The Court must interpret the definition of "pollutant" in the context of (1) the specific product at issue, and (2) the particular factual events giving rise to the underlying claim.  *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1232 (Pa. Super. Ct. 2002).  There must be "requisite causation," because, "[a]bsent causation between the alleged pollutant and the injury, the claim would be

outside of a pollution exclusion clause." *Municipality of Mt. Lebanon v. Reliance Ins. Co.*, 778 A.2d 1228, 1232 (Pa. Super. Ct. 2001).

Under New York law, "[t]o negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applied in the particular case." *Cont'l Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 652 (N.Y. 1993). Ambiguity in a policy, specifically an exclusionary clause, is construed against the insurer. *Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.*, 469 N.Y.S.2d 655, 658 (N.Y. 1993). When construing pollution exclusion clauses, courts are to exclude coverage only in cases of environmental pollution. *Cont'l Casualty Co.*, 593 N.Y.S.2d at 972; *Karrol v. Atomergic Chem. Corp*., 194 A.D.2d 715, 715 (N.Y. App. Div., 2d Dep't 1993); *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.,* 47 F.3d 34, 37 (2d Cir. 1995); *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 962 F.Supp. 2d 479, 486 (E.D.N.Y. 2013). Environmental pollutants are described as "damages . . . [which] are truly environmental in nature, or where the . . . damages resulting from what can accurately be described as the pollution of the environment." *Belt Painting Corp. v. TIG Ins. Co.*, 742 N.Y.S.2d 332, 336 (N.Y. App. Div., 2d Dep't 2002) (citations omitted). An insurer's duty to defend is "exceedingly broad." *Colon v. Aetna Life Ins. Co.*, 494 N.Y.S.2d 688, 689 (N.Y. 1985). Exclusionary provisions in insurance contracts are to be "accorded a strict and narrow construction." *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (N.Y. 1984).

## III.   ANALYSIS

### A.   Defendants' Motion for Summary Judgment

After carefully considering the matter, the Court grants Defendants' motion for the reasons stated in their memoranda of law. *See, supra,* Part I.C. of this Decision and Order. To those reasons, the Court adds the following analysis.

The Court begins by noting that Defendants have moved to dismiss *all* of Plaintiffs' claims–including the claims of Plaintiff Upstate Shredding Disc, Inc.  (*See, e.g.,* Dkt. No. 27, at 2 [Defs.' Notice of Motion, seeking the dismissal of "Plaintiffs' Complaint in its entirety"]; Dkt. No. 27, Attach. 38, at 9 & n.1 [attaching page "1" of Def.'s Memo. of Law, requesting the dismissal of the Complaint of, *inter alia*, Plaintiff Upstate Shredding Disc., Inc., and arguing that, "[i]nsofar as Plaintiffs do not dispute that Upstate Shredding Disc, Ins. is not an insured under the Hartford Policies, Hartford is entitled to summary judgment as to that Plaintiff . . ."].).  It is undisputed that Hartford did not issue any policies to Plaintiff Upstate Shredding Disc, Inc., nor is Upstate Shredding Disc, Inc., listed as an additional insured on any insurance policy issued by Hartford.  *See, supra,* Statement of Fact No. 29 in Part I.B.1. of this Decision and Order.  Moreover, Plaintiffs have not opposed this portion of Defendants' motion.  (*See generally* Dkt. No. 28, Attach. 9 [Plfs.' Opp'n Memo. of Law].)  As explained above, where a non-movant has fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See, supra,* Part II.A. of this Decision and Order.  Here, the Court finds that the legal argument possesses facial merit for the reasons offered by Defendants.  As a result, Plaintiff Upstate Shredding Disc, Inc.'s claims are dismissed.

Turning to the claims of the remaining Plaintiffs, the Court finds that those claims should be dismissed for the following reasons.

### 1.      No Conflict of Law Exists

As an initial matter, the Court finds that, although there are certainly some differences between the law of New York and that of Pennsylvania, no actual conflict of law exists as those laws apply to this case because, under both states' law, the outcome of this case would be the

same: Defendants have established that the exclusions are stated in clear and unmistakable language, are subject to no other reasonable interpretation, and apply to the environmental pollution that occurred on November 28, 2011, in Scranton, Pennsylvania.

The provision in the primary general liability policies clearly defines "pollutants" as, in part, "any . . . gaseous . . . irritant or contaminant, including . . . chemicals . . . ." *See, supra,* Fact No. 33 in Part I.B.1.c. of this Decision and Order.  Similarly, the provision in the umbrella liability policies clearly defines "pollution hazard" as "an actual exposure . . . to the corrosive, toxic or other harmful properties of any . . . gaseous . . . [p]ollutants" or "[i]rritants," which include "[c]hemicals."  *See, supra,* Fact No. 35 in Part I.B.1.c. of this Decision and Order.

Of course, chlorine is a chemical.  *See, e.g., Webster's New World College Dictionary* at 258 (Houghton Mifflin Harcourt 4th ed. 2010) (defining "chlorine" as "a greenish-yellow, poisonous, gaseous *chemical* element, one of the halogens, having a disagreeable odor and obtained by electrolysis of certain chlorides: it is used as a bleaching agent, in water purification, in various industrial processes, etc.") (emphasis added); *Oxford American Dictionary* at 109 (Oxford Univ. Press 1980) (defining "chlorine" as "a *chemical* element used in sterilizing water and in industry") (emphasis added).

Furthermore, the provision in the primary general liability policies clearly excludes from coverage, in part, the "actual . . . [or] alleged . . . discharge, . . . migration, release or escape of pollutants."  *See, supra,* Fact No. 31 in Part I.B.1.c. of this Decision and Order.  Similarly, the provision in the umbrella liability policies clearly excludes from coverage, in part, the "actual . . . injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for . . . an actual exposure . . . to the corrosive, toxic or other harmful properties of any . . . gaseous . . . [p]ollutants" or "[i]rritants." *See, supra,* Fact No. 35 in Part I.B.1.c. of this Decision and Order.

Under the circumstance, the Court finds that a rational fact-finder could not dispute that such a "discharge," "migration," "release," "escape" and/or "exposure" of pollutants was alleged in the *Houser* complaint.  For example, the *Houser* complaint alleged that "toxic chlorine gas . . . [was] released from a cylinder/tank/vessel stored on [Plaintiffs'] property, releasing the chlorine gas into the air and causing a toxic cloud of chlorine gas to form," which "drifted in the air from the [Plaintiff's] property" to other properties, where Heidi Houser and Dorothy Houser "were overtaken by the cloud and were forced to inhale toxic fumes of chlorine gas from the cloud," and where Mary Ogden, Mary Irwin and Emelie Irwin were "engulfed" by the cloud and "forced to inhale toxic fumes of chlorine gas from the cloud."  *See, supra,* Fact Nos. 15, 17, 18 and 19 in Part I.B.1.b. of this Decision and Order (emphasis added).

With regard to Plaintiffs' argument that the Fourth Department has "held a nearly identical definition of 'pollutant' to be *per se* ambiguous" (Dkt. No. 28, Attach. 9, and 15 [attaching page "11" of Plfs.' Opp'n Memo. of Law]), that argument overstates the holding of the Fourth Department in *Roofers' Joint Training, Apprentice and Educ. Comm. of W. New York v. Gen. Accident Ins. Co. of Am.*, 275 A.D.2d 90 (N.Y. App. Div., 4th Dep't 2000) ("*Roofers*"), and ignores the distinction between the facts of *Roofers* and the facts of case before this Court. In *Roofers*, the Fourth Department held that "the total pollution exclusion endorsement in the policy is ambiguous *as applied to Rickard's claim*," because "[a]n ordinary insured in plaintiff's shoes would not understand that the policy does not cover a claim for bodily injuries such as those sustained by Rickard."  *Roofers' Joint Training, Apprentice and Educ. Comm. of W. New York*, 275 A.D.2d at 92 (emphasis added).  Moreover, the claim for bodily injuries in *Roofers* stemmed from "toxic fumes" (caused by heated roofing membrane) which remained in a classroom and injured a single construction worker there during a demonstration.  *Id*. at 91.

Such a minor amount of fumes confined to their intended area (i.e., indoors) is significantly different from the gaseous substance in this case–a white cloud of chlorine gas large enough to travel outdoors to two adjoining properties and trap and engulf five people (including an automobile) there.  *Cf. Cataract Metal Finishing, Inc. v. Hartford Fire Ins. Co.*, 02-CV-0261, 2003 WL 251955, at *2, n.10 (W.D.N.Y. Jan. 2, 2003) (distinguishing *Roofers* on the ground that the claim in *Roofers* stemmed merely from noxious fumes that remained inside a building); *Gold Fields Am. Corp. v. Aetna Cas. and Surety Co.*, 295 A.D.2d 289, 289-90 (N.Y. App. Div., 1st Dep't 2002) (distinguishing *Roofers* on the ground that the claim in *Roofers* stemmed merely from hazardous substances that were not released "into the open environment").

Such a large, white, environmentally mobile cloud is also factually distinguishable from the gaseous substances in the other two New York cases relied on by Plaintiffs, which involved (1) a spray of sulfuric acid that remains on a property and affects only one person, or (2) some paint and solvent fumes that remain in an office building and bother one person.  *Karroll  v. Atomergic Chemetals Corp.,* 194 A.D.2d 715, 715 (N.Y. App. Div., 2d Dep't 1993); *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 388 (N.Y. 2003).

Indeed, a factually analogous case supports the Court's conclusion that New York law bars coverage under the policies.  *See Tri-Mun. Sewer Comm'n v. Cont'l Ins. Co.*, 636 N.Y.S.2d 856, 857 (N.Y. App. Div., 2d Dep't 1996) (applying New York law to find that noxious odors, which emanated from a sewage plant and traveled to an adjoining property, constituted "pollution" for purposes of a pollution exclusion provision in an insurance policy).

For all of these reasons, the Court grants Defendant's motion for summary judgment.

**2.      Even if a Conflict of Law Were to Exist, Pennsylvania Law Would Apply to the Polices Held by Plaintiff Ben Weitsman & Son of Scranton, LLC**

Even if an actual conflict of law were to exist between the law of New York and that of Pennsylvania, the Court would find that Pennsylvania law applies to the polices held by Plaintiff Ben Weitsman & Son of Scranton, LLC.  More specifically, under New York's applicable choice-of-law rule, the Court would find that, with regard to policies held by Plaintiff Ben Weitsman & Son of Scranton, LLC, Pennsylvania has the "greatest interest in the litigation." *See, supra,* Part II.B.1. of this Decision and Order.

The parties to those policies clearly understood Pennsylvania to be the principal location of the insured risk.  (Dkt. No. 27, Attach. 11, 14, 17 [attaching applications and policies].)  As a result, that fact is to be given controlling weight.  *See, supra,* Part II.B.1. of this Decision and Order.  Moreover, even if the understood location of the insured risk was spread across multiple states (i.e., Pennsylvania and New York), Plaintiff Ben Weitsman & Son of Scranton, LLC's principal place of business was in Pennsylvania.  *See, supra,* Statement of Fact No. 2 in Part I.B.1. of this Decision and Order.  As a result, that fact would be given controlling weight.  *See, supra,* Part II.B.1. of this Decision and Order.

Analyzed under Pennsylvania law, the pollution exclusion provisions in this case bar coverage for the claim in question.  As stated above in Part III.A.1. of this Decision and Order, the provision in the primary general liability policies clearly defines "pollutants" as, in part, "any . . . gaseous . . . irritant or contaminant, including . . . chemicals . . . ."  Similarly, the provision in the umbrella liability policies clearly defines "pollution hazard" as "an actual exposure . . . to the corrosive, toxic or other harmful properties of any . . . gaseous . . . [p]ollutants" or "[i]rritants,"

which include "[c]hemicals."[8]

As also stated above, chlorine is a chemical.[9]  Even if chlorine were not a chemical, chlorine is clearly an "irritant."  *See Ford City Borough Mun. Sewage Disposal Auth. v. EMC Ins. Co's.*, 73 Pa. D. & C. 4th 225, 231 (Pa. Com. Pl. 2005) (finding that *Webster's New Universal Unabridged Dictionary* [1989] defines "chlorine" as "a highly *irritating*, greenish-yellow gaseous halogen, capable of combining with nearly all other elements, produced principally by electrolysis of sodium chloride and used widely to purify water, as a disinfectant and bleaching agent, and in the manufacture of many important compounds") (emphasis added).

Finally, as stated above, the provision in the primary general liability policies clearly excludes from coverage, in part, the "actual . . . [or] alleged . . . discharge, . . . migration, release or escape of pollutants."  Similarly, the provision in the umbrella liability policies clearly excludes from coverage, in part, the "actual . . . injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for . . . an actual exposure . . . to the corrosive, toxic or other harmful properties of any . . . gaseous . . . [p]ollutants" or "[i]rritants."  A rational fact-finder could not dispute that such a "discharge,"

_____

[8]       The Court notes that, even if "chemicals" were not expressly included as a type of "irritant," chemicals could reasonably be inferred as being so included.  *See Municipality of Mt. Lebanon v. Reliance Ins. Co*., 778 A.2d 1228, 1233 (Pa. Super. Ct. 2001) (finding that *Webster's New Universal Unabridged Dictionary* [1989] defines an "irritant" broadly as "a biological, chemical or physical agent that stimulates a characteristic function or elicits a response, esp[ecially] an inflammatory response," and contaminant" as "something that . . . render[s] impure or unsuitable by contact or mixture with something unclean, bad, etc.").

[9]       *See also Atl. Casualty Ins. Co. v. Zymblosky*, No. 1167 MDA 2016, 2017 WL 3017728, at *4 (Pa. Super. Ct. July 17, 2017) (relying on insurer's definition of "chlorine" as a "chemical" in concluding that chlorine was a pollutant under an insurance policy); *Ford City Borough Mun. Sewage Disposal Auth. v. EMC Ins. Co's*., 73 Pa. D. & C. 4th 225, 231 (Pa. Com. Pl. 2005) ("It is clear from the above definitions that chlorine is a gaseous chemical agent which elicits an inflammatory response.").

"migration," "release," "escape" and/or "exposure" of pollutants was alleged in the *Houser* complaint.

For all of these reasons, the Court finds that an alternative ground exists in support of granting summary judgment to Defendant with regard to the polices held by Plaintiff Ben Weitsman & Son of Scranton, LLC.

The Court notes that a more difficult question would be presented by the policies held by the other two Plaintiffs. The parties to those policies clearly understood the location of the insured risk to be spread across two states (i.e., New York and Pennsylvania). (Dkt. No. 27, Attach. 12, 13, 15, 16, 18, 19 [attaching applications and policies].) Moreover, those two Plaintiffs' principal places of business were in New York. *See, supra,* Statement of Fact Nos. 3 and 4 in Part I.B.1. of this Decision and Order. Ordinarily, the latter fact would be given controlling weight. *See, supra,* Part II.B.1. of this Decision and Order. However, the fact would not be given controlling weight if Pennsylvania "has a more significant relationship" to the transaction in question. *See, supra,* Part II.B.1. of this Decision and Order. More specifically, the fact would not be given controlling weight if Pennsylvania has a "sufficiently compelling public policy" interest in the particular law in conflict, while New York lacks a "strong governmental interest[]" in the particular law in conflict. *See, supra,* Part II.B.1. of this Decision and Order. Answering this question would depend on what exactly the "transaction in question" involved and what the particular law in question regarded: (1) insuring against the release of pollutants during Plaintiffs' *involvement in a scrap-metal business in Scranton, Pennsylvania*, or (2) insuring against the release of pollutants by Plaintiffs' *conducting of any covered business under the policy (i.e., in either New York or Pennsylvania)*. While the latter answer appears more likely, it would result in virtually identically worded policies held by entities having

40

similar owners being construed under different state laws with regard to the same occurrence, in the same decision (with inconsistent results, if Plaintiffs are correct that New York law differs from Pennsylvania law).

Fortunately, the Court need not, and thus does not, decide this question, because it has already found that, as a threshold matter, New York law bars coverage under all of the policies. *See, supra,* Part III.A.1. of this Decision and Order.

### B.      Plaintiffs' Cross-Motion for Summary Judgment

After carefully considering the matter, the Court denies Plaintiffs' cross-motion for the reasons stated in Defendants' opposition memorandum of law and the reasons set forth above). *See, supra,* Parts I.C.2.b. and III.A. of this Decision and Order.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' cross-motion for summary judgment (Dkt. No. 28) is **DENIED**; and it is further

**ORDERED** that Plaintiff's complaint is dismissed.

Dated:          February 13, 2018
                Syracuse, NY

                                        Hon. Glenn T. Suddaby
                                        Chief U.S. District Judge

41